# COURT OF APPEALS OF VIRGINIA

**Record No. 0652-25-3**

MASOUD AGAH

v.

LEYLA NAZHANDALI

Present: Judges Malveaux, Athey and Frucci

Argued at Lexington, Virginia

Opinion Issued July 28, 2026[*]

---

**FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY**
K. Mike Fleenor, Jr., Judge

Paul A. Dull (Friedman Law Firm, P.C., on briefs), for appellant.

Sheila Moheb-khosrovi (Moheb Legal Defense, PLLC, on briefs), for appellee.

---

**MEMORANDUM OPINION BY
JUDGE STEVEN C. FRUCCI**

Following multiple evidentiary hearings, the Circuit Court of Montgomery County entered a

final order of divorce granting Masoud Agah (husband) and Leyla Nazhandali (wife) a divorce *a*

*vinculo matrimonii* on the grounds that the parties have been separated for a period of one year as

required by Code § 20-91(A)(9)(a). On appeal, husband argues that the circuit court erred in: (1)

calculating and awarding wife spousal support; (2) calculating the *mehr*[1] obligation; (3) failing to

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "Iranian marriages are contracts consisting of offer, acceptance, and *mehrieh*."
*Mehrabian v. Norouzi*, No. 1940, 2023 Md. App. LEXIS 258, *1 n.1 (Apr. 3, 2023). *Mehrieh*,
also referred to as *mehr* or *mahr*, "is a personal obligation of the groom to the bride, consisting of
anything that has economic value." *Id.* "A wife is entitled to payment of the *mehrieh* upon
demand at any time following the marriage." *Id.* "The *mehrieh* functions (1) as a disincentive
for a husband to exercise his disproportionate power to divorce his wife without cause under
Islamic law and (2) as a measure of financial security for a wife in the event of divorce or
husband's death . . . ." *Id.* The Court cites this unpublished Maryland case not for any

offset the value of real property located in Tehran, Iran; (4) determining that wife is entitled to the diamond wedding ring; and (5) denying husband's motion to amend the record. For the following reasons, we affirm the rulings of the circuit court.

BACKGROUND

"Under settled principles of appellate review, we view the evidence in the light most favorable to wife, as the party prevailing below, and we grant wife 'all reasonable inferences fairly deducible therefrom.'" *Giraldi v. Giraldi*, 64 Va. App. 676, 680 (2015) (citation omitted) (quoting *Anderson v. Anderson*, 29 Va. App. 673, 678 (1999)).

Husband and wife were married on April 22, 1997, in Tehran, Iran. A certificate of marriage (the "Marriage Certificate") was registered on April 22, 1998. Two children were born of the marriage. On January 14, 2023, the parties separated, and less than two months later, husband filed for divorce. Shortly thereafter, wife filed an answer and counterclaim.

On November 22, 2024, the circuit court entered a settlement conference order (the "Agreement") memorializing the parties' agreement as to the disposition of certain assets. Among the property that was divided, wife was entitled to "Wife's 'Wedding Ring,' otherwise known as the Wife's new wedding ring, which was purchased by the parties in Iran after selling Wife's original wedding ring to be credited towards the purchase of the new wedding ring." On January 24, 2025, the circuit court held a hearing on the equitable distribution of the remaining marital property.

precedential value, but solely for its helpful articulation of this foreign term. We will refer to the *mehrieh* as *mehr* to be consistent with the terminology used by the parties in the present case.

*Mehr*

In determining equitable distribution, wife asked the circuit court to be awarded the monetary equivalent to 114 gold coins that she is owed under the Marriage Certificate. As to the *mehr* provision, the Marriage Certificate stated:

> MARRIAGE PORTION: One volume of Holy Quran, a pane of mirror and a pair of candlesticks received by the wife and 114 Yek Bahar Azadi gold coins and the cost of one travel to Hajj Pilgraimate (Omreh) which remains the liability of the husband payable to the wife at her prompt demand, signed.

Wife averred that "it's a contractual obligation" that husband "verified and confirmed." Husband agreed that the Marriage Certificate was a contract but contended that because the provision is rooted in "Islamic tradition" that other religions do not have, and because of the "separation of state and church," the circuit court could not enforce it.

The circuit court ruled that it did "have the authority to enforce the pre-marital contract (mehr) and order the payment of the 114 gold coins." The circuit court calculated the value of the 114 gold coins and awarded wife $11,304.02.[2]

*Real property in Iran*

Also at the hearing, the parties discussed an apartment located in Iran that they purportedly owned. Wife testified that the parties helped wife's parents purchase the apartment. The apartment is "in the name of [wife's] dad" so her "dad owns it" but "between all of us, we knew that two third[s] of it belongs to Masoud and I." Wife elaborated that after her parents pass

---

[2] The circuit court laid out its method for calculation in its equitable distribution order. Although husband on brief generally contends that the "trial court used its own figures to determine the value of the weight of the coins. Since no value is given, these specific 114 coins should have been given to Wife upon demand." However, husband did not object to the circuit court's calculation of the gold coins. Rather, he insisted that Iranian law governed the Marriage Certificate and if the circuit court did decide to enforce the *mehr*, that the court should "treat it as marital property" and divide it 50/50 between husband and wife. Accordingly, husband did not preserve the issue of whether the circuit court erred in its calculation of the gold coins. *See* Rule 5A:18.

away, "two third[s] of that house will go to [the parties' children]." Wife asserted that the deed to the house does not have the parties' names on it but only has her dad's name. And that the two-thirds ownership of the parties is "just orally understood." Husband did not dispute the fact that the parties' names were not on the deed of the apartment and did not produce any documentation suggesting otherwise.

The circuit court ultimately found that "ownership of the entire interest in the apartment is formally vested in a third party" and that it had "no authority to distribute property owned by a third party."

*Wife's wedding ring*

Also at the equitable distribution hearing, wife brought up the issue of certain personal property that had been divided in the Agreement but that she had not picked up from the marital residence yet. Specifically, she brought up a mistake in the Agreement where the provision discussing her wedding ring incorrectly described the ring as being purchased in Iran when it was actually purchased in the Caribbean.

The Agreement stated that wife was entitled to "Wife's 'Wedding Ring,' otherwise known as the Wife's new wedding ring, which was purchased by the parties in Iran after selling Wife's original wedding ring to be credited towards the purchase of the new wedding ring." Wife testified that when husband and wife were married in 1997, she received a wedding band without diamonds, but that husband promised to get wife "a proper ring at some point." Then, while on a family trip to the Caribbean, wife purchased "the wedding ring that I had" for the rest of the marriage and "wore all the time" until the parties separated. Wife explained that there was no other ring that was purchased in Iran, and that the ring in question is the only wedding ring that she owns, because she "traded the old [ring] in" a "[l]ong time ago." Notably, husband did not dispute wife's testimony and the fact that there was no other ring. Rather, he contended that

- 4 -

because wife's attorney made a mistake, that the ring should be considered marital property and split accordingly. To be sure, when discussing the discrepancy, husband admitted that he said that "this [ring] does not exist."

In its award of equitable distribution, the circuit court ordered husband to return "the diamond ring purchased for [wife] during a trip to the Caribbean."

On March 14, 2025, the circuit court entered the final decree of divorce and awarded wife spousal support in the amount of $2,000 per month for 20 years. Husband appeals.

ANALYSIS

I. Spousal Support

"Whether and how much spousal support will be awarded is a matter of discretion for the trial court." *Giraldi*, 64 Va. App. at 681 (quoting *Northcutt v. Northcutt*, 39 Va. App. 192, 196 (2002)). "The trial court has 'broad discretion in setting spousal support and its determination will not be disturbed except for a clear abuse of discretion.'" *Id.* at 681-82 (quoting *Fadness v. Fadness*, 52 Va. App. 833, 845 (2008)). Likewise, "[w]hen the record discloses that the trial court considered all of the statutory factors, the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion." *Fadness*, 52 Va. App. at 846 (quoting *Gamble v. Gamble*, 14 Va. App. 558, 574 (1992)). "A trial court 'by definition abuses its discretion when it makes an error of law . . . [and] [t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" *Giraldi*, 64 Va. App. at 682 (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)). "A trial court's decision regarding spousal support constitutes reversible error only if 'its decision is plainly wrong or without evidence to support it.'" *Id.* (quoting *Fadness*, 52 Va. App. at 845).

In the final decree for divorce, the circuit court ordered husband to pay wife $2,000 per month for a period of 20 years. In making this decision, the circuit court considered "all the

- 5 -

relevant factors in Virginia Code § 20-107.1," specifically including husband's gross annual income of $331,129, wife's gross annual income of $176,024, the parties' marriage of roughly 25 years prior to separation, and husband's ability to pay.

Husband argues that the circuit court erred in its spousal support award by incorrectly applying the "presumptive spousal support guidelines" and by not examining each factor under Code § 20-107.1(E). However, he provides no authority that requires the circuit court to explain its analysis for each individual factor. Rather, the circuit court is required to "consider" all the factors and accompany its ruling with "written findings and conclusions of the court identifying the factors in subsection E which support the court's order." Code § 20-107.1(E), (F).

Here, the circuit court stated that it made its ruling "based upon all the relevant factors in Virginia Code § 20-107.1." Further, the circuit court supplied its "written findings and conclusions of the court identifying the factors in subsection E" supporting its order by specifically noting the parties' respective incomes, the duration of the marriage, and husband's ability to pay. Code § 20-107.1(F).[3] Since the circuit court is not required to apply the "presumptive spousal support guidelines" nor required to explain its analysis for every factor under Code § 20-107.1(E), we cannot say it erred in failing to do so. Accordingly, the circuit court did not err in its award of spousal support.

---

[3] In addition to husband's argument that the circuit court erred in failing to comply with Code § 20-107.1(E), he also broadly states that "section F clearly states that the trial court shall state the facts the court contemplated and specifically considered in determining the amount and duration of the award. In the case at bar, the trial court did no such analysis." But, as recited above, the circuit court did state specific factors under Code § 20-107.1(E) that it considered in its award of spousal support. To the extent that husband contends the circuit court's analysis misses the mark in sufficiently connecting these factors to the award, his argument is waived. *See* Rule 5A:20(e). Husband provides no case law supporting such an assertion and we will not construct his argument for him. *See Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) ("[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

II. *Mehr*

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal." *Fox v. Fox*, 61 Va. App. 185, 201 (2012). "A trial court must be alerted to the precise issue to which a party objects." *Id.* "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the *particular point* being made in time to do something about it." *Bethea*, 297 Va. at 743 (emphasis added) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "A specific, contemporaneous objection also provides the opposing party an opportunity to address an issue at a time when the course of the proceedings may be altered in response to the problem presented." *Perry v. Commonwealth*, 58 Va. App. 655, 666-67 (2011) (quoting *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 79 (2010)). Virginia circuit court judges are a resilient lot; a specific and timely objection will often result in judicial self-correction by making rulings that protect the litigants from potential error in real time, thereby eliminating even the need for an appeal. *See Brown v. Commonwealth*, 279 Va. 210 (2010).

At the hearing on equitable distribution, husband did not dispute the Marriage Certificate's authenticity as a contract. Indeed, throughout the hearing he consistently referred to

the Marriage Certificate as a contract, e.g., "the marriage contract that we had," "the marriage contract that we signed at the time of the marriage," and "I'm talking about the contract." Further, in his written objections he asserts that the circuit court erred in partially applying Iranian law and partially applying Virginia law, but he did not contend that the Marriage Certificate was not a binding agreement. To be sure, the circuit court stated in its equitable distribution order that "[b]oth parties acknowledged the existence of the contract and neither objected to the court considering evidence thereof" and husband "simply argued that the contract did not apply since it was consummated in Iran." But confusingly, husband now contends that "[n]o reasonable court could determine that a contract existed." However, the circuit court was not advised of this alleged error and it "had no opportunity to consider, address, or correct it." *Fox*, 61 Va. App. at 202. Therefore, we will not consider this assignment of error on appeal.[4] *See* Rule 5A:18. Although there are exceptions to Rule 5A:18, husband has not invoked them, and we do not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

---

[4] On appeal, husband argues alternatively that even if the Marriage Certificate is a contract, it is not an enforceable premarital agreement because it "does not meet the requirements of the statute." This argument also differs from husband's specific objection to the circuit court's ruling. There, he argued that the *mehr* is a "post-marital obligation" i.e., it should be considered marital property and divided equally. He did not object nor argue that the Marriage Certificate fell short of the requirements in the Code for premarital agreements. Rather, he contended that because the timing of the fulfillment of the obligation occurred after the parties entered into marriage, that it was not a premarital agreement. Accordingly, we will not consider his alternative argument either.

In addition, husband's argument that the circuit court erred in its valuation of the 114 gold coins is waived pursuant to Rule 5A:18. After the circuit court's order of equitable distribution, husband did not object to the court's method of valuation of the gold coins. Husband did file a motion to reconsider a number of things, including "the valuation of the mehr (gold coins)," but the record is devoid of the circuit court ruling on the motion to reconsider. As such, the issue is waived. *See Westlake Legal Grp. v. Flynn*, 293 Va. 344, 352 (2017) ("A motion to reconsider is insufficient to preserve an argument not previously presented unless the record establishes that the court had an opportunity to rule on the motion.").

III. Real Property in Iran

"[D]ecisions concerning equitable distribution rest within the sound discretion of the trial court." *Payne v. Payne*, 77 Va. App. 570, 596 (2023) (quoting *Stark v. Dinarany*, 73 Va. App. 733, 750 (2021)). "Because making an equitable distribution award is often a difficult task, 'we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (quoting *Howell v. Howell*, 31 Va. App. 332, 350 (2000)). As such, "a circuit court's 'equitable distribution award will not be overturned unless the [appellate court] finds an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" *Id.* (alteration in original) (quoting *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020)).

Husband argues that the circuit court erred in its equitable distribution award by failing to offset the value of real property located in Iran. Specifically, he contends that the "trial court acknowledged the parties' one-third interests in Iranian real estate" but then failed to account for its value in its award of equitable distribution. This is a misstatement of the circuit court's findings. To be sure, the circuit court, in its decree of equitable distribution, stated that the "parties *purport* to have an ownership interest in an apartment in Iran" and that "it was agreed that the [wife's] father would hold title to the property." (Emphasis added). Indeed, the circuit court stated that it "finds that ownership of the entire interest in the apartment is formally vested in a third party."

According to Code § 20-107.3(A)(2), "[m]arital property is . . . all property titled in the names of both parties . . . [and] all other property acquired by each party during the marriage which is not separate property." Husband did not produce evidence that the apartment in Iran is titled in his or the wife's name. Rather, there was testimony that everything was purchased in

wife's father's name and the deed "only has [wife's] father's name" on it.  The circuit court "shall have no authority to order the division or transfer of separate property . . . which is not jointly owned."  Code § 20-107.3(C).  Accordingly, without evidence that the real property in Iran was marital property, the circuit court did not abuse its discretion in declining to account for the property in its equitable distribution award.

    IV.  Wife's Wedding Ring

    The circuit court's interpretation of a property settlement agreement is an issue of law that we review de novo.  *Stacy v. Stacy*, 53 Va. App. 38, 43 (2008) (en banc).  "Property settlement agreements are contracts subject to the same rules of formation, validity, and interpretation as other contracts."  *Allen v. Allen*, 66 Va. App. 586, 595-96 (2016) (quoting *Bergman v. Bergman*, 25 Va. App. 204, 211 (1997)).  "In construing the terms of a property settlement agreement, just as in construing the terms of any contract, we are not bound by the trial court's conclusions as to the construction of the disputed provisions."  *Smith v. Smith*, 3 Va. App. 510, 513 (1986).

    "An ambiguity exists when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time."  *Pocahontas Mining LLC v. CNX Gas Co., LLC*, 276 Va. 346, 352-53 (2008).  "Normally, an ambiguity in a cont[r]act is 'patent,' that is, the language of the contract itself reveals that it can be interpreted in more than one way."  *Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 278 Va. 444, 460 (2009).  On the other hand, a "latent ambiguity exists where language 'while appearing perfectly clear at the time the contract [] [is] formed, because of subsequently discovered or developed facts, may reasonably be interpreted in either of two ways."  *Id.* (alterations in original) (quoting *Galloway Corp. v. S.B. Ballard Constr.*, 250 Va. 493, 503 (1995)).  If an ambiguity exists, the circuit court should "enforce the contract if the real

meaning of the ambiguous provision can be discerned from extrinsic evidence." *Vilseck v. Vilseck*, 45 Va. App. 581, 588 (2005) (quoting *Smith v. Smith*, 43 Va. App. 279, 287 (2004)). "A court's primary focus in considering disputed contractual language is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement." *Pocahontas Mining LLC*, 276 Va. at 352.

In the Agreement, the parties agreed that wife was to have "Wife's 'Wedding Ring." The ring was then described as being "otherwise known as the Wife's new wedding ring, which was purchased by the parties in Iran after selling Wife's original wedding ring to be credited towards the purchase of the new wedding ring." On its face, this provision appears to be "perfectly clear." *Va. Elec. & Power Co.*, 278 Va. at 460. However, "because of subsequently discovered or developed facts," a latent ambiguity is apparent because wife's wedding ring was not purchased in Iran, and in fact, wife does not own a ring that was purchased in Iran. *Id.* Indeed, husband did not dispute the fact that wife's wedding ring was not purchased in Iran. As such, because a latent ambiguity exists in this provision of the Agreement, the circuit court was tasked with "enforc[ing] the contract if the real meaning of the ambiguous provision [could] be discerned from extrinsic evidence." *Vilseck*, 45 Va. App. at 588 (quoting *Smith*, 43 Va. App. at 287).

It is evident from the testimony of both of the parties that, when describing the wedding ring, the Agreement should have stated "Caribbean" instead of "Iran." Wife explained that there was no other ring that was purchased in Iran and that the ring in question is the only wedding ring that she owns, because she "traded the old [ring] in" a "[l]ong time ago." Further, husband did not dispute the fact that there was no other ring. To be sure, when discussing the ring "purchased in Iran" he admitted that "this [ring] does not exist." It is evident from the Agreement that the parties intended wife to have her wedding ring: "Wife's 'Wedding Ring,'

otherwise known as the Wife's new wedding ring, which was purchased by the parties in Iran after selling Wife's original wedding ring to be credited towards the purchase of the new wedding ring."

Although mistakenly describing the ring as "purchased in Iran" created a question as to what ring the parties intended wife to have, the statements of the parties and the other descriptive language surrounding this provision make clear that the parties intended wife to have her wedding ring that was actually purchased in the Caribbean. As such, the circuit court did not err in awarding wife the wedding ring.

V. Motion to Amend the Record

"Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "Unsupported assertions of error 'do not merit appellate consideration.'" *Id.* (quoting *Jones*, 51 Va. App. at 734). As we have repeatedly held

> [a] court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research. To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he raises. On the other hand, strict compliance with the rules permits a reviewing court to ascertain the integrity of the parties' assertions which is essential to an accurate determination of the issues raised on appeal.

*Id.* (alterations in original) (quoting *Jones*, 51 Va. App. at 734-35). "Furthermore, 'when a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant,' this Court may treat the question as waived." *Id.* (quoting *Parks v. Parks*, 52 Va. App. 663, 664 (2008)).

Here, other than including the standard of review, husband did not include any legal authority supporting his argument that the circuit court erred in denying his motion to amend the

record. Husband's brief, as to assignment of error five, does not comply with Rule 5A:20(e). "At the risk of stating the obvious, the Rules of the Supreme Court are rules and not suggestions; we expect litigants before this Court to abide by them." *Id.* at 746 (quoting *Eaton v. Wash. Cnty. Dep't of Soc. Servs.*, 66 Va. App. 317, 332 n.1 (2016)). Accordingly, this "[u]nsupported assertion[] of error 'do[es] not merit appellate consideration.'" *Id.* at 744 (quoting *Jones*, 51 Va. App. at 734). The issue as to whether the circuit court erred in denying husband's motion to amend the record is waived.

## CONCLUSION

For the reasons stated above, we affirm the rulings of the circuit court.

*Affirmed.*